Mark Bradshaw – Bar No. 192540
**SHULMAN HODGES & BASTIAN LLP**
26632 Towne Centre Drive, Suite 300
Foothill Ranch, California 92610-2808
Telephone:   (949) 340-3400
Facsimile:    (949) 340-3000
Email: mbradshaw@shbllp.com

Attorneys for Secured Creditor Haleh Turkaman

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.  2:10-bk-19554 ER |
| **374 WEST 8TH STREET, LLC,** | Chapter  11 |
| Debtor. | **SECURED CREDITOR HALEH TURKAMAN'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF HALEH TURKAMAN IN SUPPORT** |
| | Date:  June 22, 2010<br>Time:  10:00 a.m.<br>Place:  Courtroom 1568<br>         255 East Temple Street<br>         Los Angeles, California |

**SHULMAN HODGES & BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

1

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................5

II. BACKGROUND INFORMATION ....................................................................................6

III. DISCUSSION ......................................................................................................................7

    A. Adequate protection ................................................................................................7

        1. There is No Equity Cushion to Protect the Lender ......................................7

        2. Whether the Property is Declining in Value is Irrelevant ...........................9

        3. Proposed Improvements are Not Adequate Protection ...............................9

    B. The Property is Not Necessary to an Effective Reorganization ...........................11

        1. The Plan Cannot be Confirmed..................................................................11

        2. The Anticipated Financing Motion Cannot be Granted............................14

    C. The Court Should Not Invoke Section 105 ...........................................................16

IV. CONCLUSION..................................................................................................................18

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

2

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baybank-Middlesex v. Ralar Distribs.*, 69 F.3d 1200, 1203 (1st Cir. 1995) .................................. 8

*Cusano v. Klein,* 264 F.3d 936, 946-49 (9th Cir. 2001) ................................................................ 8

*In re American Mariner Industries, Inc.*, 734 F.2d 426, 435 (9th Cir. 1984) .............................. 15

*In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) ............................................................ 7

*In re Jug End in the Berkshires, Inc.*, 46 B.R. 892, 899-900 (Bankr. D. Mass. 1985) .................. 8

*In re JZ LLC,* 371 B.R. 412, 417 (B.A.P. 9th Cir. 2007) ............................................................... 8

*In re Kaskel*, 269 B.R. 709, 715 (Bankr. D. Idaho 2001) .............................................................. 7

*In re Le May*, 18 B.R. 659, 660-61 (Bankr. D. Mass. 1982) ......................................................... 8

*In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) ......................................................................... 15

*In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) ............................................................ 9

*In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987) ............................................................. 15

*In re Pitts*, 2 B.R. 476, 478 (Bankr. C.D. Cal. 1979) ................................................................... 9

*In re Rogers Dev. Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) .............................................. 8

*In re Rolland*, 317 B.R. 402, 421-422 (Bankr. C.D. Cal. 2004) .................................................. 8

*In re Schaller*, 27 B.R. 959, 961-62 (W.D. Wis. 1983) ............................................................... 8

*Kost v. First Interstate Bank of Greybull*, 102 B.R. 829, 831-32 (D. Wyo. 1989) ....................... 8

*Larson v. Groos Bank, N.A.,* 204 B.R. 500, 502 (W.D. Tex. 1996); ............................................ 7

*Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 564 (3d Cir. 1994) .......................................................................................... 16

*Vanguard Airlines, Inc. v. Int'l Aero Components, Inc. (In re Vanguard Airlines, Inc.),* 298 B.R. 626, 635 (Bankr. W.D. Mo. 2003) ............................................................ 7

**STATUTES**

Bankruptcy Code Section 101(51B) .............................................................................................. 6

Bankruptcy Code Section 1107 ..................................................................................................... 6

Bankruptcy Code Section 1121 ................................................................................................... 17

**SHULMAN HODGES &**
**BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC

4207-000\EXP. 56

1 | Bankruptcy Code Section 362(a) .................................................................................................. 17
2 | Bankruptcy Code Section 362(d)(1) ........................................................................................... 7, 9
3 | Bankruptcy Code Section 362(d)(3) .............................................................................................. 17
4 | Bankruptcy Code Section 364 ........................................................................................................ 14

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

Haleh Turkaman, a secured creditor and party in interest in the above-captioned case ("Lender"), hereby submits the following reply in support of the Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362, docket #9 (the "Motion") and in response to the Supplemental Opposition to the Motion, docket #50 ("Supplemental Opposition") filed by debtor 374 West 8th Street, LLC, a California limited liability company ("Debtor"). In support of the Motion and this Reply, the Lender submits the following:

## I. INTRODUCTION

The Lender is owed approximately $4.5 million secured by a real estate project that the Debtor says, perhaps correctly, is worth less than $2,435,000. If that were not sufficiently bad news, the Debtor has now proposed a chapter 11 plan which improperly attempts to classify the Lender's deficiency claim, understates the amount of that claim, and materially and unreasonably seeks to modify the terms of the Lender's fully matured loan. The Debtor has also promised/threatened to file a financing motion whereby the Debtor will attempt to borrow up to $1.5 million from an insider of Debtor and to prime the Lender's lien.

The Debtor's case and the Debtor's plan are about protecting insiders at the expense of creditors. The proposal to place $1.5 million of senior priority insider debt on top of a property that is already severely over encumbered is transparent as to motive. The plan's attempt to separately classify insider unsecured claims is equally disturbing. The plan itself depends on a series of unrealistic assumptions about the Debtor's ability to borrower money in a sufficient amount, its ability to prevail in pending litigation and the timing for doing so, the cost and timing to complete construction work, the likely sales prices to be received from completed units and the timing to achieve those sales, and of course its ability to gerrymander creditor classes to achieve a consenting impaired class.

Ultimately, the Debtor appeals to the Court's equitable powers, but the Debtor has done nothing to warrant equitable relief. As the maxim states, equity follows the law and in this case the law, facts and evidence clearly support relief from stay in favor of the Lender. For the reasons stated herein, the Lender requests that the Motion be granted.

///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

5

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

## II. BACKGROUND INFORMATION

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 15, 2010 ("Petition Date").  The Debtor is currently in possession of its property and operating and managing its business affairs as the debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108 and as a result of an order entered April 27, 2010 (docket #39) Denying Motion for Relief From Turnover under 11 U.S.C § 543 (the "Turnover Order").

Based on the Debtor's original bankruptcy schedules filed March 26, 2010 (docket #18) and the Debtor's Amended Schedule A filed on April 22, 2010 (docket #38), the Debtor's sole asset (other than a specious litigation claim) consists of an 18-unit residential condominium development project located at 374 West 8th Street, San Pedro, California, 90731 (the "Property")[1].  As the Debtor acknowledges on its bankruptcy petition, the Debtor's bankruptcy case is a single asset real estate case within the meaning of Bankruptcy Code section 101(51B).

Pursuant to the Debtor's original bankruptcy schedules and the amended schedules, the Property was worth $2.4 million and Lender was owed $4,021,053.57 as of the Petition Date. The original bankruptcy schedules (docket #18) and the amended schedules (docket #38) further state that the secured debt owed to Lender was <u>not</u> contingent, unliquidated or disputed.  After Lender filed the relief from stay motion, the Debtor filed a further amendment to Schedule D, for the first time suggesting that Lender's secured claim is "disputed".[2]

Lender filed the Motion on March 24, 2010 (docket #9) which was set for hearing on April 22, 2010.  Pursuant to the Court's ruling at the hearing, the Court found that one requirement for relief from stay, no equity, was satisfied. Pursuant to the Court's ruling at the hearing and pursuant to the Turnover Order (docket #39), the hearing on the Motion was continued to June 22, 2010.

The Debtor filed its Supplemental Opposition to the Motion (docket #50) on June 8, 2010.  On June 16, 2010, Lender retained new counsel, Shulman Hodges & Bastian, LLP

---

[1] *See*, Lender's Request for Judicial Notice Exhibits 1 and 2 (Petition and Schedules – docket #18; Amended Schedules A and D - docket #38).

[2] *See*, Lender's RJN Ex. 3 (Amended Schedule D, docket #54).

SHULMAN HODGES & BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

6

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

("SHB") to represent Lender in connection with the Motion and the Debtor's bankruptcy case. SHB immediately commenced work on this Reply and served it upon parties in interest within one day of being retained. Lender asserts that it has substantially complied with Local Bankruptcy Rule 9013-1(f) and that parties in interest have been afforded reasonable time to review and consider the Reply (and in fact will had more time to review the Reply prior to the hearing than SHB had to review the Supplemental Opposition and prepare the Reply).

### III. DISCUSSION

**A. Adequate protection**

### 1. There is No Equity Cushion to Protect the Lender

One basis to grant the Motion is lack of adequate protection. In the Motion, Lender requests relief from the automatic stay pursuant to Section 362(d)(1) because the Lender's interest in the Property is not adequately protected and specifically because the Lender's interest is not protected by an adequate equity cushion. This is not unique or even unusual request by the Lender and in fact is a basis for relief set forth on the Court's mandatory Form F 4001-1M.CUST. The only issue then is whether there is sufficient evidence for the Court to find that relief is appropriate pursuant to Section 362(d)(1) based on the lack of an equity cushion.

If the Property has no equity, which the Court has found and the Debtor has admitted,[3] there clearly cannot exist a sufficient equity cushion to protect the Lender where, as here, the Lender is the senior secured creditor. The Debtor has twice submitted a bankruptcy Schedule A, each of which values the Property at $2.4 million. These schedules are admissions of the Debtor.[4] The Debtor's most recent statement of the value of the Property is contained in the

---

[3] *See*, Supp. Opp. p.11.

[4] "Statements in bankruptcy schedules are executed under penalty of perjury and, when offered against a debtor, are eligible for treatment as judicial admissions. *Larson v. Groos Bank, N.A.,* 204 B.R. 500, 502 (W.D. Tex. 1996); *Vanguard Airlines, Inc. v. Int'l Aero Components, Inc. (In re Vanguard Airlines, Inc.),* 298 B.R. 626, 635 (Bankr. W.D. Mo. 2003); *In re Kaskel*, 269 B.R. 709, 715 (Bankr. D. Idaho 2001); *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988), quoting *In re Fordson Eng'g Corp.,* 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982). Judicial admissions are conclusively binding on the party who made them. *Am. Title Ins.,* 861 F.2d at 226; *Fordson*, 25 B.R. at 509. Even

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

7

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

Supplemental Opposition in which the Debtor states that the current value of the Property is "less than $2,435,000". (Supp. Opp. 6:24.) For ease of calculations the Lender is using the figure of $2.4 million herein for the value of the Property although even if a value of $2,435,000 is used the result is the same.

Based on the Declaration of Haleh Turkaman filed concurrently with the Motion, the Lender was owed $4,498,317.21 as of the Petition Date and the loan fully matured on January 26, 2009. Even if the Turkaman Declaration is ignored, the Debtor has acknowledged on all of its bankruptcy Schedules D (there have been three of them so far) that the Lender has a liquidated claim in excess of $4 million.

In round numbers, the Property has negative equity of $2.1 million (i.e., $2.4 million - $4.5 million = <$2.1 million>). An equity cushion of 0% is not adequate protection for purposes of Section 362(d) and an equity cushion of -87.5% is less so. Although it has been held that an equity cushion, standing alone, can provide adequate protection, *Baybank-Middlesex v. Ralar Distribs.*, 69 F.3d 1200, 1203 (1st Cir. 1995), a 0% cushion is not. *See Kost v. First Interstate Bank of Greybull*, 102 B.R. 829, 831-32 (D. Wyo. 1989) (collecting cases; equity cushion of 20% or more generally held adequate while cushion of less than 11% generally held insufficient); *In re Jug End in the Berkshires, Inc.*, 46 B.R. 892, 899-900 (Bankr. D. Mass. 1985) (8.3% insufficient); *In re Le May*, 18 B.R. 659, 660-61 (Bankr. D. Mass. 1982) (7% is inadequate); *In re Rogers Dev. Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (15% to 20% equity cushion held to be sufficient to provide adequate protection to a creditor even though the debtors had no equity in the property); *In re Schaller*, 27 B.R. 959, 961-62 (W.D. Wis. 1983) (17% to 18% cushion held not to offer adequate protection where cushion was being rapidly eroded by the daily accrual of interest on the debt); *In re McGowan*, 6 B.R. 241, 243 (Bankr.

---

when schedules are amended, the old schedules are subject to consideration by the court as evidentiary admissions. *Kaskel*, 269 B.R. at 715; *Bohrer*, 266 B.R. at 201." *In re Rolland*, 317 B.R. 402, 421-422 (Bankr. C.D. Cal. 2004). It is settled that the debtor has a duty to prepare these bankruptcy schedules and statements "carefully, completely, and accurately." *In re JZ LLC,* 371 B.R. 412, 417 (B.A.P. 9th Cir. 2007) (citing *Cusano v. Klein,* 264 F.3d 936, 946-49 (9th Cir. 2001).

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

8

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

1  E.D. Pa. 1980) (holding a 10% cushion sufficient as adequate protection where monthly
2  payments were proposed to cover interest accruing on the claim); *In re Pitts*, 2 B.R. 476, 478
3  (Bankr. C.D. Cal. 1979) (holding a 15% cushion to be "minimal").

4  The Debtor has no equity in the Property and no equity cushion exists. These facts are
5  themselves sufficient to grant relief from stay for cause pursuant to Bankruptcy Code Section
6  362(d)(1).

### 2. Whether the Property is Declining in Value is Irrelevant

8  The Debtor argues in its Supplemental Opposition that the value of the Property is not
9  declining. (Supp. Opp. 8:25.) This statement by the Debtor is possibly made in response to
10 section 11 of the Turkaman Declaration in which the box was checked noting that the fair market
11 value is declining. This is clearly Turkaman's testimony but it is not necessary to grant the relief
12 requested. The Motion requests relief from stay based on Section 362(d)(1) but does not indicate
13 as a basis for such relief that the fair market value is declining. That box on the Court's Form
14 has not been checked by the Lender. Instead, as discussed above, the Lender seeks and is
15 entitled to relief from stay based on the lack of an adequate equity cushion. Whether or not the
16 Property value is declining is unknown. The Turkaman Declaration opines that it is, the
17 declaration of Robert Jeffries, offered by the Debtor, suggests that the value is not declining and
18 is "at least stable." Whatever the reality, the Court need not make a factual finding on this issue
19 in order to grant the Motion.

### 3. Proposed Improvements are Not Adequate Protection

21 The Debtor's belief that proposed improvements to the Property serve as adequate
22 protection for the Lender go beyond mere debtor optimism and are completely illusory. Such
23 "adequate protection" depends on a future motion for DIP financing which cannot be granted, a
24 disclosure statement that cannot be approved, and resolution of litigation that will take years to
25 complete and which will not result in any recovery for the Debtor.

26 The Debtor's pleadings are not clear or consistent but it appears that the Debtor intends to
27 use alleged litigation recoveries to repair alleged damage to the Property and intends to use
28 proposed DIP financing to complete construction of the Property, which combined allegedly

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

9

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

serve as improvements to the Property which in turn arguably adequately protects the Lender. The Debtor's representations in this regard are discussed below.

The Debtor states that the current fair market value of the Property is "less than $2,435,000" and that more than $1,300,000 is needed to repair alleged damages. (Supp. Opp. 6:21-24.) Actually, the declaration of James Cole, offered by the Debtor, states that the damage is "at least $600,000, and may exceed the $1,300,000.00 that I am informed was expended on the construction of the structure to date." (Cole Decl. ¶ 9.) Given that Mr. Cole lacks personal knowledge with respect to the $1.3 million figure the actual damages (assuming for the sake of argument that Mr. Cole is otherwise credible and competent) may be closer to $600,000. The Debtor has filed a lawsuit to recover these alleged damages and intends to use the proceeds to repair the Property. Mr. Ashai's declaration states "[w]ith the damages from the Lawsuit for fixing the Property Damages . . ." (Ashai Decl. ¶ 13.) Finally, the Debtor asserts that the value of the Property will be increased by at least the cost of the demolition and clean up. (Supp. Opp. 9:1.) The Debtor has no evidence for this last proposition but even if it is treated as fact rather than argument, that means the value of the Property would increase at least $600,000 *if* and *when* Debtor wins the lawsuit and completes the repairs.

The result of the foregoing is that the Debtor will litigate the lawsuit for years and perhaps longer depending on appeals, the Debtor likely will recover nothing but arguably may recover at least the $600,000 figure offered by Mr. Cole, the Debtor will then have to expend those sums and actually repair the Property, and at that point Lender's negative equity cushion would be reduced but would still be negative. In other words, the current negative equity of <$2.1 million> might be reduced by up to $1.3 million assuming best case scenario for the Debtor. This also assumes no attorneys' fees or other amounts are added to the loan balance during the years that the Lender has to defend against the litigation. This further assumes that the Debtor pays all real property taxes, insurance, and other expenses associated with the Property so that the Lender's position is not further jeopardized. It stretches any reasonable definition of adequate protection to claim that a lender who has a present equity cushion of -87.5% and whose collateral has no equity at all, is actually protected because many years from

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

10

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

now if the debtor's wins contentious litigation then the lender will have less of a negative equity cushion. Because the Lender is not adequately protected, the Motion should be granted.

The Debtor also argues that it will obtain DIP financing in the form of a loan from an insider secured by a priming lien and that such financing will be used to improve the Property. That argument is addressed below in connection with the Debtor's proposed chapter 11 plan.

**B.    The Property is Not Necessary to an Effective Reorganization**

In connection with the prior hearing on the Motion the Court's tentative ruling correctly noted that "[i]t is the Debtor's burden to demonstrate the property is essential for an effective reorganization in prospect before the Court can deny the relief requested[,]" and that "[i]f no financing of at least $1.5 million is obtained, the Court will find the real property is not essential for an effective reorganization that is in prospect." Since the last hearing on the Motion (held April 22, 2010), the Debtor has filed a disclosure statement that cannot be approved and which does not demonstrate that the Property is necessary for reorganization, and the Debtor has failed to obtain approval of DIP financing.

The Debtor argues that "the Property is the only significant property of the Debtor, so it is essential for the Debtor's reorganization." (Supp. Opp. 11:11-12.)  If that argument were correct then relief from stay could never be granted in a single asset real estate case. The reality is that the Debtor's bankruptcy case is a single asset real estate case and whether or not the Property is essential for reorganization depends on whether there is a reasonable possibility for reorganization within a reasonable time. In this case, there is neither.

**1.    The Plan Cannot be Confirmed**

The Debtor's plan is based around two contingent events:  (1) the Debtor will be able to obtain DIP financing from an insider of the Debtor secured by a priming lien; and (2) the Debtor will prevail in litigation that was only recently commenced in an amount sufficient to meet its commitments.  The Debtor's plan is little more than wishful thinking and is patently unconfirmable.

The Lender will file formal comments in response to the Debtor's disclosure statement if that proves necessary, but in the interim the Lender notes several fatal issues with the proposed

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

11

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

plan. According to the Debtor's disclosure statement, Ashai Construction[5] will lend *up to* $1.5 million to the Debtor to be repaid at 6.5% interest.[6] Page 21 of the Debtor's disclosure statement makes it clear that there will be "no more than" $1.5 million in financing. Assuming the Debtor obtains the full $1.5 million in financing (a significant assumption for several reasons), the Debtor provides no evidence that $1.5 million will be sufficient to complete construction of the condominiums. Moreover, even if $1.5 million is obtained and is sufficient to complete construction it does not appear there will in fact be $1.5 million available for construction.

The Debtor will need to pay, pursuant to its disclosure statement, approximately $210,000 to administrative creditors consisting almost entirely of professional fees. The Debtor will also need to pay the $78,000 reimbursement of post-petition expenses that Ashai Construction is requesting in the disclosure statement. It is unclear whether this $78,000 will be used to pay post-petition property taxes, insurance, and related items but if not then additional funds will be needed for that purpose.

The Debtor needs to pay the State Board of Equalization ("SBE") and the Los Angeles County Tax Collector ("Tax Collector"). The Tax Collector is owed $7,158.19 according to the Debtor, which the disclosure statement indicates will be paid on the effective date of the plan. The disclosure statement does not mention Bankruptcy Code Section 511 or California Revenue and Taxation Code section 4103, but based on these sections interest has been accruing on this claim at 18% since the Petition Date. The SBE is owed $37,010 according to the Debtor which it

---

[5] Ashai Construction and Development Corporation is 2% membership interest holder in Debtor pursuant to the Debtor's statement of financial affairs and also pursuant to the Debtor's disclosure statement. Tony Ashai's declaration in support of the Supplemental Opposition identifies himself as President of Ashai Construction and Design, Inc., the managing member of the Debtor. The Lender assumes these are in fact the same entities and in either case Tony Ashai signed the bankruptcy petition on behalf of the Debtor and both he and Ashai Construction are insiders of the Debtor.

[6] *See*, Lender's RJN Ex. 4 (Disclosure Statement p. 18, docket #56).

**SHULMAN HODGES & BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

12

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

also proposes to pay on the effective date.[7] Based on these effective date obligations the Debtor will have less than $1.2 million available for construction.

Even if the Debtor has ample funds for construction, the plan cannot be confirmed because the Debtor will not have a consenting impaired class to support the plan. As currently drafted the Debtor's plan has four creditor classes and one equity class. Class one is Lender's secured claim which the Debtor values at $2,435,000. Class two is the class of mechanics' lien holders (four total claimants) for a total of just under $150,000. Class three are the Debtor's general unsecured creditors which the Debtor indicates is $567,243.07 at page 18 of the disclosure statement but in other locations indicates is approximately $723,000. Class four is the Turkaman unsecured deficiency claim.

Lender's class one secured claim in the amount of $2,435,000 may be correct based on the Debtor's valuation of the Property, but it does not reflect the impact, if any, of the Debtor's proposed DIP financing. In the unlikely event the Debtor were to obtain $1.5 million of DIP financing in the form of a priming lien then the Lender's secured claim would arguably be $935,000, which is itself a basis to deny any priming lien. Regardless of the outcome of any DIP financing motion, the plan will fail the fair and equitable requirements of Section 1129. The plan proposes to reduce the contract interest rate on the loan from 9% to 5%. Moreover, the plan proposed to extend the maturity date of the loan by more than four years and even that new maturity date is only an estimate. Such provisions also violate the good faith requirements of the Code. The Lender would be compelled to vote its class one ballot to reject the plan.

Class two is misclassified because the mechanics' lien holders are junior priority lienholders and based on the value of the collateral they are totally unsecured. The current class two has to be merged with the current class three general unsecured creditors and thus it will not vote.

---

[7] The actual amounts owed to creditors are unknown because no claims have been filed in the case. A claims bar date has been set but according to the bankruptcy case docket no notice of claims bar date has been sent out by the Debtor despite the language of the claim bar date order which requires service within ten days.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

13

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

The current class three (before including mechanics' lien holders) consists entirely of insider creditors who are not entitled to vote on the plan.

That leaves the current class four unsecured deficiency claim of Turkaman which the Debtor incorrectly states is $1,586,053.57. Based on the amount owed to the Lender on the Petition Date and the Debtor's value of the Property, the deficiency claim amount would be $2,063,317.21. It has long been the case law in the Ninth Circuit that separate classification of deficiency claims is not permitted and therefore the current class four unsecured claim will have to be included with other general unsecured creditors.

The result of the foregoing is that the Debtor actually only has two impaired creditor classes, the secured claim of the Lender and the class of general unsecured claims. If the Lender the votes to reject the plan in both classes, which it certainly would based on the proposed plan, the plan cannot be confirmed.

### 2. The Anticipated Financing Motion Cannot be Granted

The Debtor has not yet filed a motion for authority to obtain post-petition financing pursuant to Bankruptcy Code Section 364. More importantly, the Debtor has not actually obtained such authority. Leaving aside for the moment the Court's instruction to the Debtor that the Court will find the Property is not necessary for reorganization if financing of at least $1.5 million is not obtained, the present situation is a disclosure statement and plan which is entirely contingent on a highly unlikely outcome. This is more than a just a moving target, but rather it is fundamental to the structure and the confirmability of the proposed plan.

The Lender does not believe the Debtor can obtain financing pursuant to Section 364(d). The Code provides:

> (d) (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
> (A) the trustee is unable to obtain such credit otherwise; and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

14

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

Among the ways a debtor may demonstrate the existence of adequate protection is by supplying the pre-petition lender with a new third-party guaranty or with substitute collateral. These new protections might be sufficient for "the whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). Accordingly, a proposal depending upon a pre-petition lender having adequate protection, no matter its form, "'should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.'" *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) (quoting *In re American Mariner Industries, Inc.*, 734 F.2d 426, 435 (9th Cir. 1984)). Whether protection is adequate "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the superpriority given to the post-petition loan. *In re American Mariner*, 734 F.2d at 432. In other words, the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing.

The Debtor's financing motion has not been filed, but based on the discussion of the proposed financing in the Debtor's disclosure statement and Supplemental Opposition, there appears to be no scenario where the Debtor can provide adequate protection for purposes of Section 364(d). The Third Circuit and District Court reversed a Bankruptcy Court decision where the debtor offered far more in the way of adequate protection than the Debtor has offered here. "The bankruptcy court concluded that Swedeland demonstrated that Carteret had adequate protection based upon four factors: (1) Swedeland would turn over to Carteret approximately $ 1,250,000 in the cash collateral account; (2) Swedeland would pay Carteret future release prices for every unit it sold; (3) the increased value of the Crystal Springs property due to the continued construction; and (4) the continued existence of Carteret's lien and security interest in the Bowling Green Golf Course and the personal guaranties given by Swedeland's principals. The district court ruled that the bankruptcy court's findings were clearly erroneous because Swedeland offered no new consideration to Carteret to offset its diminution of interest as a result of the superpriority lien given to First Fidelity. Accordingly, none of the factors the bankruptcy court enumerated showed Carteret had adequate protection. We agree with the district court."

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

15

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

*Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 564 (3d Cir. 1994).

Adequate protection does not require the Lender to bear all the delay and risk of the Debtor's pie-in-the-sky schemes. The Debtor has to be able to get the full $1.5 million from the insider lender. This is at best uncertain since the Debtor has already indicated that it may need an alternative lending source and that under no circumstances will more than $1.5 million be loaned. The $1.5 million has to be sufficient to cover all of the costs of to complete construction of the project, to pay going forward expenses such as taxes and insurance, and to pay effective date payments under the plan. Pursuant to the Debtor's disclosure statement the Debtor needs both DIP financing and litigation recoveries to fulfill its promises to creditors. The Debtor has to be right about the value of the condos at completion and the timing to complete them and the cost to complete them. Even if the Debtor gets everything right adequate protection is lacking. The debtor in *Swedeland* offered far more than just the promise of future increase in collateral value and that consideration was soundly rejected. The Debtor's failure to obtain DIP financing and its inability to do so support granting Lender relief from the stay.

## C.    The Court Should Not Invoke Section 105

On June 9, 2010, the Debtor filed an adversary complaint (adv. docket #1) commencing adversary case number 2:10-ap-02038 ER (the "Lawsuit").[8] The Debtor states that "Debtor's actions verify reorganization is in prospect because the Debtor has filed or soon will file the Lawsuit". (Supp. Opp. 11:17-18.) The fact that the Debtor commenced a lawsuit does not mean that it has viable reorganization prospects. On the contrary, the fact that the outcome of the Debtor's chapter 11 case depends on the Lawsuit demonstrates the weakness of the bankruptcy case and inability of the Debtor to confirm a plan. Feasibility of the Debtor's plan depends on

---

[8] The Debtor says that "[s]ince the previous hearing on the Motion, the Debtor discovered that, while the Receiver was responsible for the Property, the Receiver and the Current Lender (and possibly others) improperly allowed the Property to sustain significant damages." (Supp. Opp. 2:21-3:1.)    The previous hearing on the Motion was April 22, 2010. Contrary to the Debtor's statement, the Debtor's original bankruptcy schedules dated March 26, 2010 (docket #18) were filed a month before the hearing and Schedule B indicates the potential claim against the Receiver.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

16

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

the outcome of the Lawsuit because the Debtor indicates it needs the monetary recovery to fund the plan. The structure of the plan itself depends on the outcome of the Lawsuit because subordination and other relief is sought. The Debtor asks the Court to invoke Section 105 to enjoin the Lender from pursuing its rights so that the Debtor can pursue the Lawsuit. This is inappropriate for several reasons.

Delaying the case and the confirmation until the Lawsuit is finally resolved is unreasonable. The Debtor acknowledges that this is a single asset real estate case and in such cases the Debtor must, pursuant to Section 362(d)(3), file within 90 days of the petition date a plan of reorganization that "has a reasonable possibility of being confirmed within a reasonable time." Because the plan as written cannot be confirmed until the Lawsuit is finished, the Debtor cannot confirm a plan within a "reasonable time" as required for single asset real estate cases. Moreover, it is highly likely that even if the Court were inclined to grant extensions of the exclusivity period under Section 1121, the ultimate deadline of 18 months following the petition date would likely be passed before the Lawsuit is resolved. In that event the Lender would file its own competing plan.

The Debtor already enjoys (and has since March 15, 2010 enjoined) the protections of the automatic stay pursuant to Bankruptcy Code Section 362(a). The issue should not be whether a new injunction under Section 105 is appropriate but whether the existing injunction under Section 362(a) should be lifted because the Lender has complied with the requirements to obtain such relief under Section 362(d). As demonstrated in the Motion and in this Reply, the Lender is entitled to the relief requested.

Even if a new injunction pursuant to Section 105 were appropriate, Federal Rule of Bankruptcy Procedure 7001 requires the filing of an adversary proceeding for such relief and the Debtor would need to file a motion for preliminary injunction or temporary restraining order. If and when the Debtor seeks such relief the Lender will respond and demonstrate (although it is the Debtor's burden) that the Debtor is not likely to succeed on the merits and that the balance of the harms favors the Lender. The Lender is the largest secured and largest unsecured creditor in the Debtor's bankruptcy estate. The Lender is owed approximately $4.5 million and other than

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

17

G:\WP\CASES\S-T\374 WEST STREET, LLC\PLD\RFS REPLY.DOC
4207-000\EXP. 56

insider debt, the total amount of creditors according to the Debtor is approximately $200,000. The Lender has the most to lose in this case and does not support the Debtor's efforts to materially alter the loan terms, risk its collateral, and strip its lien position.

The Motion and the Lawsuit are not directly connected. In the unlikely event that the Debtor prevails on the lawsuit it can collect whatever monetary damages are awarded. In the meantime, the Lender is entitled to relief from stay to pursue the Lender's remedies which does not prevent the Debtor from pursuing its remedies. The Debtor claims it would be inequitable to allow relief from stay to the Lender when the Lender (allegedly) caused damage to the Property. Equitable relief is not available because the Debtor has not proven any of its allegations against the Lender, the Lender strongly denies the allegations, the Lender has satisfied the requirements of Section 362(d), and because the two matters are not interdependent.

## IV. CONCLUSION

**WHEREFORE**, based upon the foregoing, the Lender respectfully submits that good cause exists for granting the Motion and requests that the Court enter an order authorizing the relief requested in the Motion.

Dated: June 17, 2010         Respectfully submitted,

**SHULMAN HODGES & BASTIAN LLP**

*/s/ Mark Bradshaw*

Mark Bradshaw
Attorneys for Secured Creditor Haleh Turkaman

## DECLARATION OF HALEH TURKAMAN

I, Haleh Turkaman, declare as follows:

1. I am the moving party in connection with the Motion for Relief From the Automatic Stay filed with the Bankruptcy Court on March 24, 2010. I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.

2. On June 16, 2010, I retained new counsel, Shulman Hodges & Bastian LLP to represent me in connection with the Motion and the Debtor's bankruptcy case.

3. As of March 15, 2010, the petition date, I was owed approximately $4.5 million secured by an 18-unit residential condominium development project located at 374 West 8th Street, San Pedro, California, 90731.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 17, 2010, at San Pedro, California.

_Haleh Turkaman_
Haleh Turkaman

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate a NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **26632 Towne Centre Drive, Suite 300, Foothill Ranch, California 92610**.

A true and correct copy of the foregoing document described as **SECURED CREDITOR HALEH TURKAMAN'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF HALEH TURKAMAN IN SUPPORT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 17, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Scott C Clarkson    sclarkson@lawcgm.com
- Christine M Fitzgerald    cfitzgerald@lawcgm.com
- Eve A Marsella    emarsella@lawcgm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served) - On **June 17, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

| **Counsel for Receiver – Via Overnight Delivery** | **Interested Party - Via Overnight Delivery** |
|---|---|
| McKenna Long & Aldridge LLLP<br>Attn: Gary Owen Caris<br>300 S. Grand Avenue 14th Floor<br>Los Angeles, CA 90071-3124 | Office of the U.S. Trustee<br>725 S. Figueroa Street 26th Floor<br>Los Angeles, CA  90017 |

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. P. 5 and/or controlling LBR, on **June 17, 2010**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed*.

**Judge's Copy – Via Messenger**
Honorable Ernest M. Robles
U.S. Bankruptcy Court – Los Angeles
255 E. Temple Street, Bin Outside of Suite 1560
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **June 17, 2010** | **Erlanna Lohayza** | *(signature)* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*     **F 9013-3.1**